**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| MARY JANE EUSTACE, RUTH CHAPPEL, and CONSTANCE M. RODD, ) ) ) ) | |
| Plaintiffs, ) ) | **C.A. NO.** |
| v. ) ) ) SPRINGFIELD PUBLIC SCHOOLS, ) ) Defendant. ) ) | **COMPLAINT, DECLARATORY and COMPENSATORY RELIEF REQUESTED, and JURY DEMAND** |

## I.     INTRODUCTION

1.     Mary Jane Eustace ("Eustace"), Ruth Chappel ("Chappel"), and Constance M. Rodd ("Rodd") (collectively, "Plaintiffs") bring this action against Defendant, Springfield Public Schools ("SPS" or "Defendant") on the basis of their disabilities and requests for reasonable accommodations. As set forth herein, Defendant has violated M.G.L. c. 151B, Section 4, Paragraph 16, M.G.L. c. 152, §75B, the American with Disabilities Act, 42 U.S.C. §12101, *et seq.* ("ADA"), Section 504 of the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §794 (The "Rehabilitation Act"), by failing to provide Plaintiffs and similarly situated persons with transfers to different positions as a reasonable accommodation for their disabilities. Plaintiffs also bring a declaratory judgment action against Defendant, pursuant to The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaration that Defendant's reliance on M.G.L. c. 71, Section 59B of the Education Reform Act to refuse to transfer employees to vacant positions as a reasonable accommodation is in violation of the ADA.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to the following statutes:

   a. 28 U.S.C. §1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States;

   b. 28 U.S.C. §1343 (3) and (4), which gives district courts jurisdiction over actions to secure civil rights extended by the United States government;

   c. 28 U.S.C. §1367, which gives the district court supplemental jurisdiction over state law claims.

3. Venue is appropriate in this judicial district under 28 U.S.C. §1391(b) because the events that gave rise to this Complaint occurred in this district.

## II. PARTIES

4. Plaintiff Mary Jane Eustace is an adult resident of Springfield, Massachusetts.

5. Plaintiff Ruth Chappel is an adult resident of Wilbraham, Massachusetts.

6. Plaintiff Constance M. Rodd is an adult resident of Southampton, Massachusetts.

7. Defendant Springfield Public Schools is a public school department with a principal place of business in the City of Springfield, Hampden County, Massachusetts.

8. All of the Plaintiffs reside in Massachusetts and the Defendant's principal place of business is located in the City of Springfield, Hampden County, Massachusetts.

### III. STATEMENT OF FACTS

9. Plaintiffs/Class Representatives are handicapped/disabled persons under M.G.L. c. 151B, M.G.L. c. 152, §75B and 42 U.S.C. §12112(a).

10. Eustace worked for the SPS as a teacher since 2001.

11. In or around February and April 2016, Eustace suffered two (2) traumatic workplace injuries when a student hit her and then, two months later, pushed her down.

12. Shortly thereafter, Eustace left work and was diagnosed with a handicap - Post Traumatic Stress Disorder ("PTSD") resulting from the aforementioned workplace injuries.

13. In or around May 2016, Eustace provided SPS with a medical note from her treating medical provider stating that Eustace could return to work but that, due to her PTSD, she would need to work in a different location with a less volatile student population.

14. In or around June 2016, SPS HR met with Eustace to discuss her need for a reasonable accommodation.

15. SPS refused to transfer Eustace to vacant positions that she was qualified to perform as a reasonable accommodate.

16. SPS could have reasonably accommodated Eustace's handicap by transferring her to a vacancy for which she was qualified to perform.

17. Instead of transferring Eustace to a vacant position, in or around June 2016, SPS instructed Eustace to apply for teaching vacancies through the application process open to all teachers.

18. Eustace applied for a number of teaching vacancies for the 2016/2017 school year that she was qualified for but she was not hired for any of the positions.

19. Thereafter, SPS continued to refuse to provide reasonable accommodation to Eustace.

20. In or around summer of 2016, SPS notified Eustace that it was intending to terminate her employment.

21. On or around August 22, 2016, Eustace, her union representative and her legal representative met with SPS representatives and disputed that she should be terminated from SPS. Eustace's counsel notified SPS that, *inter alia*, SPS could reasonably accommodate Eustace by transferring her to a vacancy in a different school and that SPS was violating the law by refusing to make this transfer.

22. On or about August 29, 2016, SPS unlawfully terminated Eustace.

23. Chappel worked for SPS as a teacher with SPS since 1994.

24. In 2012, Chappel suffered a workplace injury when she stepped off a curb at school and broke her ankle. She had two surgeries thereafter to repair the break and is handicapped as a result of this workplace injury.

25. Chappel was cleared to work part-time (16 hours per week beginning in September 2014 and worked in her position as an ILS specialist until June 2016.

26. In the spring of 2016 SPS notified Chappel that 1 of 2 ILS positions were being eliminated for the next year.

27. In or around May and June 2016, Chappel met with SPS and she explained that her restrictions involved limited hours, limited time standing, and no stair climbing (beyond 2-3 stairs).

28. In or around June 2016, SPS refused to transfer Chappel to a vacant position and, instead, instructed Eustace to apply for teaching vacancies in the Middle and High School through the application process open to all teachers.

29. Chappel applied for these vacancies. She was not selected for any of these vacancies.

30. SPS refused to transfer Chappel to vacant positions that she was qualified to perform as a reasonable accommodate.

31. SPS could have reasonably accommodated Chappel's handicap by transferring her to a vacancy for which she was qualified to perform.

32. On or about June 28, 2016, SPS notified Chappel that it was intending to terminate her employment.

33. On or about August 22, 2016, SPS representatives met with Chappel, her legal representative, and her union representative. Chappel's legal representative notified SPS that it was legally required under the ADA to transfer Chappel to a vacant position that she was qualified to perform as a reasonable accommodation and that it was violating the law by requiring Chappel to apply for vacant positions and allowing principals to decide whether to hire Chappel for a vacant position.

34. Thereafter, SPS continued to refuse to provide reasonable accommodation to Ms. Chappel and terminated her employment in September 2016.

35. Rodd has worked as a teacher with SPS since 2000.

36. In 2013, SPS transferred Rodd to Van Sickle Elementary School in 2013 and she began having asthma issues shortly thereafter. Rodd's asthma condition worsened dramatically in September 2015 when a maintenance employee came to her

classroom while she was teaching and began removing ceiling tiles that were moldy. Later that day she could barely breathe and left work.

37. Rodd was in and out of work until December 2015. She performed testing of her breathing in January 2016 that demonstrated the correlation between her handicap (asthma) and working in the Van Sickle building.

38. In January 2016 SPS received a medical note from Rodd's allergist stating that Rodd could only return to work if she was located in a different school building.

39. Since January 2016, SPS has refused to provide reasonable accommodation to Rodd by refusing to transfer her to a position that could accommodate her handicap. SPS has claimed that such a transfer would constitute an "undue hardship." When SPS met with Rodd in early 2016 to discuss her handicap, SPS refused to transfer Rodd, improperly claiming that such a transfer would constitute an undue hardship.

40. Rodd met with SPS again in May and June 2016 and again requested to be transferred to a vacancy in another SPS school building pursuant to her treating physician's proposed accommodation. SPS refused to make this reasonable accommodation and, instead, instructed Rodd to apply for vacancies.

41. SPS refused to transfer Rodd to vacant positions that she was qualified to perform as a reasonable accommodate.

42. SPS could have reasonably accommodated Rodd's handicap by transferring her to a vacancy for which she was qualified to perform.

43. Instead of transferring Eustace to a vacant position, SPS instructed Rodd to apply for teaching vacancies through the application process open to all teachers.

44. Rodd applied for these vacancies. She was not selected for any of these vacancies.

45. On or about June 16, 2016, SPS notified Rodd that it was intending to terminate her employment.

46. On or about August 9, 2016, SPS representatives met with Rodd, her legal representative, and her union representative.  Rodd's legal representative notified SPS that it was legally required under the ADA to transfer Rodd to a vacant position that she was qualified to perform as a reasonable accommodation and that it was violating the law by requiring Rodd to apply for vacant positions and allowing principals to decide whether to hire Rodd for a vacant position.

47. Rodd remained on unpaid leave and, due to SPS's failure to accommodate her, was left with no choice but to apply for retirement in November 2016.

48. SPS has refused to provide Plaintiffs with reasonable accommodation as required by the ADA.  In particular, SPS has refused to transfer Plaintiffs to vacant teaching positions that they are qualified to perform.  Instead, SPS has instructed Plaintiffs to apply for vacancies through the regular application process open to all employees in the school district.  SPS has permitted principals in each school to decide whether to select Plaintiffs for these vacancies pursuant to the regular application process and not on the basis of reasonable accommodation under the ADA.

49. SPS claims that it is not required to transfer Plaintiffs to the vacant positions as a reasonable accommodation and, instead, can require Plaintiffs to apply for vacancies under the regular application process based on the right of principals to hire teachers pursuant to M.G.L. c. 71, §59B of the Education Reform Act.

## COUNT I

50.     Plaintiffs repeat and reallege each of the allegations in paragraphs 1-49 as if fully set forth herein.

51.     The Defendant's conduct as set forth above constitutes unlawful discrimination based on disability in violation of the Americans With Disabilities Act, 42 U.S.C. §12101, *et seq.*

## COUNT II

52.     Plaintiffs repeat and reallege each of the allegations in paragraphs 1-49 as if fully set forth herein.

53.     The defendant's conduct as set forth above constitutes unlawful discrimination based on disability in violation of Section 504 of the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §794.

## COUNT III

54.     Plaintiffs repeat and reallege each of the allegations in paragraphs 1-49 as if fully set forth herein.

55.     The defendant's conduct as set forth above constitutes unlawful discrimination based on disability in violation of M.G.L. c. 151B § 4(16).

## COUNT IV

56.     Plaintiffs repeat and reallege each of the allegations in paragraphs 1-49 as if fully set forth herein.

57.     The defendant's conduct as set forth above violates M.G.L. c. 152, §75B.

### COUNT V – DECLARATORY JUDGMENT

58. Plaintiffs repeat and reallege each of the allegations in paragraphs 1-49 as if fully set forth herein.

59. SPS has refused to provide Plaintiffs with reasonable accommodation as required by the ADA. In particular, SPS has refused to transfer Plaintiffs to vacant teaching positions that they are qualified to perform. Instead, SPS has instructed Plaintiffs to apply for vacancies through the regular application process open to all employees in the school district. SPS has permitted principals in each school to decide whether to select Plaintiffs for these vacancies pursuant to the regular application process and not on the basis of reasonable accommodation under the ADA.

60. SPS claims that it is not required to transfer Plaintiffs to the vacant positions as a reasonable accommodation and, instead, can require Plaintiffs to apply for vacancies under the regular application process based on the right of principals to hire teachers pursuant to M.G.L. c. 71, §59B of the Education Reform Act.

61. Plaintiffs seek a declaration from this Court that Defendant's reliance on M.G.L. c. 71, Section 59B of the Education Reform Act in refusing to transfer employees to vacant positions as a reasonable accommodation is in violation of the ADA.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request this Honorable Court to enter Judgment for Plaintiffs on all counts and to:

1. Grant declaratory judgment as set forth herein.

2.	Grant Plaintiffs injunctive relief, expunging their terminations from any and all records, including but not limited to Plaintiffs' personnel files, offering them immediate reinstatement to suitable positions;

3.	Grant Plaintiffs all lost back pay and benefits;

4.	Grant Plaintiffs damages for emotional distress and other compensatory and consequential damages;

5.	Grant Plaintiffs liquidated and/or punitive damages for the Defendant's willful misconduct;

6.	Grant Plaintiffs reasonable attorneys' fees and costs for prosecution of this action; and

7.	Grant such other and further relief as this Court has deemed just and proper.

## JURY DEMAND

The Plaintiffs demand a trial by jury on all of the claims.

Respectfully submitted,

MARY JANE EUSTACE, RUTH CHAPPEL, and CONSTANCE M. RODD,

By their attorneys,

/s/Terence E. Coles
TERENCE E. COLES, BBO #600084
JILLIAN M. RYAN, BBO #682214
PYLE, ROME, EHRENBERG, P.C.
2 Liberty Square, 10th Floor
Boston, MA 02109

Dated:   November 1, 2017          (617) 367-7200