UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DERYL BLANKS,<br><br>    Plaintiff,<br><br>    v.<br><br>SPRINGFIELD PUBLIC SCHOOLS,<br><br>    Defendant. | Civil Action No. 17-30158-MGM |

<u>MEMORANDUM AND ORDER REGARDING DEFENDANT'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW AFTER TRIAL AND/OR,
IN THE ALTERNATIVE, MOTION FOR NEW TRIAL AND/OR REMITTITUR</u>
(Dkt. No. 187)
May 30, 2023

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

A group of teachers formerly employed by Defendant, Springfield Public Schools ("SPS"), commenced this action in 2017 to challenge Defendant's policy of not offering transfer to an open position at another school as a reasonable accommodation to teachers who become disabled and unable to continue working at their assigned schools. This decision addresses only the claims by Plaintiff, Deryl Blanks, that Defendant unlawfully discriminated against her on the basis of disability when it refused to transfer her to an open position at a non-alternative school as a reasonable accommodation after she experienced disabling situational anxiety while teaching at one of SPS's alternative schools. The jury entered a verdict in her favor, and Defendant filed a Renewed Motion for Judgment as a Matter of Law After Trial and/or, in the Alternative, Motion for New Trial and/or Remittitur. (Dkt. No. 187). For the reasons that follow, the court denies Defendant's request for entry of judgment as a matter of law on all grounds, grants the motion for new trial

based on the limited trial evidence supporting the jury's finding that there was actionable conduct within the required period, and denies the request for remittitur because the grant of a new trial renders it moot.

## II. BACKGROUND

Following discovery, the parties filed cross-motions for summary judgment regarding the claims of all four original plaintiffs. The extensive briefing focused on the common legal disputes but also addressed the specific facts of each teacher's alleged disability and request for transfer as a reasonable accommodation. This court entered a detailed opinion partially granting and partially denying both parties' motions. Judgment entered for Defendant on all state claims and one of plaintiffs' federal claims. The other three plaintiffs' claims that Defendant discriminated against them in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* (Count I) and the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 *et seq.* (Count II) survived summary judgment.[1] This court also granted the plaintiffs' motion for summary judgment on their request for declaratory judgment, ruling that Defendant's reliance on the Massachusetts Education Reform Act ("MERA"), Mass. Gen. Laws ch. 71, § 59B, as a basis for refusing to transfer disabled employees to vacant positions violated the ADA. Defendant later reached settlements with two of the plaintiffs, and only Ms. Blanks' claims proceeded to trial.

In the lead up to trial, the parties filed a Joint Pre-trial Memorandum in which they "agree[d] that the key contested issues of fact" were whether (1) Plaintiff was disabled within the meaning of

---

[1] Claims under the Rehabilitation Act and under the ADA are subject to the same standards. *See Calero-Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 11 n.1 (1st Cir. 2004) (citing *Oliveras-Sifre v. Puerto Rico Dep't of Health*, 214 F.3d 23, 25 n.2 (1st Cir. 2000)). At trial, the jury was instructed that the same three elements applied to claims under both statutes and the special verdict form required the jury to make a single set of findings as to those elements.

the ADA, (2) Plaintiff was a "qualified individual," (3) either party failed to engage in the interactive process required under the ADA, and (4) Defendant failed to reasonably accommodate Plaintiff's disability. (Dkt. No. 99, Joint Pre-Trial Memo., 15.) As to legal issues, the parties took different positions regarding whether this court's summary judgment ruling definitively established that reassignment to another school was a reasonable accommodation as to Plaintiff. (*Id.* at 15-18.) Although the parties did not present their disagreement to the court through a motion in limine, the court issued an order clarifying that the summary judgment ruling was that "reassignment is presumed to be a reasonable accommodation." (Dkt. No. 123, Electronic Order of 10/5/2021.) Defendant could rebut that general presumption by proving "reassignment would have conflicted with an established seniority system or union contract which created concrete employee expectations," but would not be permitted to rebut the presumption with evidence of its obligations under MERA. (*Id.*) Later, the court further clarified that Defendant could also try to establish that reassignment was not a reasonable accommodation in Plaintiff's specific situation, such as by presenting evidence of performance issues. (Dkt. No. 140, Electronic Order of 12/29/2021).

Shortly before the trial started,[2] the parties filed an updated Joint Pre-trial Memorandum. (Dkt. No. 157, Joint Pre-Trial Memo.) Defendant again asked the court to reconsider its earlier ruling that MERA did not categorically remove transfer to an open position at another school as a reasonable accommodation for teachers employed by SPS. (*Id.* at 17-18.) Additionally, Defendant identified two new disputes involving mixed issues of law and fact. (*Id.* at 19.) One contested issue concerned the fit between Plaintiff's alleged disability and her requested reasonable accommodation. The other disputed issue was whether Plaintiff's request for reasonable accommodation was timely. Plaintiff asserted this court's rulings had already resolved the legal questions related to when

---

[2] The trial was initially scheduled to begin on September 18, 2021. Trial was twice continued due to issues related to the COVID-19 pandemic and finally commenced on April 26, 2022.

reassignment to a vacant position may be a reasonable accommodation. As to the timeliness of Plaintiff's request for reasonable accommodation, Plaintiff agreed that the ADA requires actionable conduct within the 300 days before an administrative complaint is filed. In this case, the statutory period ran from November 26, 2016 through September 22, 2017, the date Plaintiff filed her complaint with the Massachusetts Commission Against Discrimination ("MCAD").[3] However, Plaintiff argued that Defendant should not be permitted to contest the timeliness of her request for reasonable accommodation during the trial because it had not done so previously and had been aware of her desire to transfer to a position at a non-alternative school from 2014 through the date of her retirement in June 2017. The court rejected Plaintiff's arguments, concluding Plaintiff had the burden to prove all the elements of her ADA claim, including that actionable conduct had occurred within the applicable statutory period.

      The evidence at trial included testimony, exhibits, and a stipulation by the parties as to certain facts regarding their communications. At the close of Plaintiff's case, Defendant moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. (Dkt. No. 168.) Defendant asserted Plaintiff's evidence was insufficient to prove (1) actionable conduct within the statutory period; (2) she was substantially limited in a major life activity, as required to establish disability for purposes of the ADA; (3) she continued to be disabled after September 1, 2016; and (4) she was a "qualified individual" as defined by the ADA. The court denied the motion and Defendant proceeded to put on its case. At the close of evidence, Defendant renewed its Rule 50(a) motion and added arguments regarding the sufficiency of Defendant's evidence to establish that transfer to a non-alternative school was either not reasonable in Plaintiff's situation or would

---

[3] The record reflects some confusion as to the date of Plaintiff's MCAD filing, but at trial, the court accepted that Plaintiff filed her MCAD complaint on September 22, 2017 and, therefore, the statutory period ran from that date back to November 26, 2016.

4

have constituted an undue hardship. (Dkt. No. 183.) The court denied the renewed Rule 50(a) motion and sent the case to the jury. (Dkt. No. 174.) The jury returned a verdict for Plaintiff and awarded her $303,599 for lost earnings, $100,000 for emotional distress, and $500,000 in punitive damages. (Dkt. No. 175).

Following the jury's verdict, Defendant renewed its motion for judgment as a matter of law pursuant to Rule 50(b) and moved for a new trial pursuant to Rule 59(a)(1) and for remittitur. (Dkt. No. 187.) Defendant filed a lengthy supporting memorandum, describing the trial evidence as insufficient to support the jury's verdict. In addition to reiterating earlier arguments, Defendant also asserted that exclusion of certain evidence and erroneous jury instructions supported its motion for a new trial.

Plaintiff countered with her own description of the trial evidence. Defendant, in turn, challenged the accuracy of some of Plaintiff's representations. Neither party had ordered a trial transcript and their descriptions of the trial evidence were not supported by citations to the trial record. While evaluating the parties' arguments, the court determined general recollections of the trial evidence lacked the precision necessary to assess, with certainty, whether Plaintiff presented sufficient evidence from which a reasonable jury could determine that (1) she was disabled from a class of jobs and (2) she had requested a reasonable accommodation during the applicable statutory period. At the court's direction, the parties obtained the trial transcripts and filed supplemental briefing supported by citations to the trial record.

### III. Standard of Review

Defendant has moved for judgment as a matter of law pursuant to Rule 50 and, alternatively, for a new trial pursuant to Rule 59. Rule 50 "allows the court to remove from the jury's consideration cases or issues when the facts are sufficiently clear that the law requires a particular

result." 9B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2521 (3d ed.); *Weisgram v. Marley Co.*, 528 U.S. 440, 447–48 (2000). "[A] motion under Rule 50(b) is a 'renewed' version of a party's motion brought under Rule 50(a)." *Santos-Arrieta v. Hosp. Del Maestro*, 14 F.4th 1, 8 (1st Cir. 2021). Litigants may bring a motion under Rule 50(a) at any time before the case is given to the jury and "[a] proper Rule 50(a) motion is a prerequisite to a proper Rule 50(b) motion." *Id.* A Rule 50(b) motion may be made after the jury is discharged, but "the scope of a Rule 50(b) motion is confined to those grounds raised in the Rule 50(a) motion." *Id.* Linking a Rule 50(b) motion to an earlier Rule 50(a) motion serves two purposes. First, requiring the earlier 50(a) motion ensures that the opposing party has notice and the possibility of curing a deficiency before the case goes to the jury. *Id.* at 9. Second, the renewal requirement "allows the judge to 'rule on the adequacy of the evidence without impinging on the jury's fact-finding province.'" *Id.* (quoting *Robles-Vazquez v. Garcia*, 110 F.3d 204, 206 (1st Cir. 1997)).

Defendant's Rule 50(b) motion for judgment as a matter of law "'faces an uphill battle,' since '[c]ourts may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party.'" *T G Plastics Trading Co., Inc. v. Toray Plastics (America), Inc.*, 775 F.3d 31, 38 (1st Cir. 2014) (quoting *Monteagudo v. Asociación de Empleados del Estado Libre Asociado de P.R.*, 554 F.3d 164, 170 (1st Cir. 2009)) (alteration in original). The "verdict should be set aside only if the jury failed to reach the *only* result permitted by the evidence." *Lestage v. Coloplast Corp.*, 982 F.3d 37, 46 (1st Cir. 2020) (emphasis in original). When assessing the evidence, the trial court "must 'view the evidence in the light most flattering to the verdict and must draw all reasonable inferences therefrom in favor of the verdict.'" *Rodríguez-Valentin v. Doctors' Ctr. Hosp. (Manati), Inc.*, 27 F.4th 14, 20 (1st Cir. 2022) (quoting *Fresenius Med. Care Holdings, Inc. v. United States*, 763 F.3d 64, 67–68 (1st Cir. 2014)).

6

By contrast, "[a] district court's power to grant a motion for a new trial is much broader than its power to grant a [motion for judgment as a matter of law]." *Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009). The court cannot grant a new trial under Rule 59 simply because it disagrees with the verdict, but can grant a new trial if it determines "the verdict is against the weight of the evidence" or a new trial "is required in order to prevent injustice." *Id.* The First Circuit has also "repeatedly recognized [that] a trial judge may order a new trial 'even where the verdict is supported by substantial evidence.'" *Id.* at 439 (quoting *Lama v. Borras,* 16 F.3d 473, 477 (1st Cir.1994)). When determining whether to grant a new trial, the court is not required to "take the evidence in the light most favorable to the nonmoving party" but may, instead, "independently weigh the evidence." *Rodriguez-Valentin*, 27 F.4th at 21.

## IV. DISCUSSION

Defendant has argued it is entitled either to judgment as a matter of law pursuant to Rule 50(b) or a new trial pursuant to Rule 59 because the trial evidence was either insufficient to support certain portions of the jury's verdict or conclusively established facts inconsistent with the jury's verdict. The asserted evidentiary issues concern three different aspects of Plaintiff's claim: (A) the occurrence of actionable conduct within the applicable statutory period, (B) Plaintiff's status as a qualified individual disabled under the ADA, and (C) the reasonableness of accommodations requested by Plaintiff or offered by Defendant. The court addresses each of these in turn.

A. Actionable Conduct within Statutory Period

Before bringing a civil action under the ADA, a plaintiff must first file a timely administrative complaint. *Brader v. Biogen Inc.*, 983 F.3d 39, 60 (1st Cir. 2020). An administrative complaint filed with MCAD is timely only as to actionable conduct that occurred during the 300

days before the complaint was filed. *Id.* In this case, the limitations period required Plaintiff to demonstrate that actionable conduct occurred on or after November 26, 2016 and the court incorporated that date into each of the questions on the special verdict form used to determine Defendant's liability. Since the only actionable conduct alleged by Plaintiff was that she requested a reasonable accommodation, transfer to an actual vacant position at a non-alternative school, and Defendant failed to provide her with any reasonable accommodation, she was required to prove that both occurred on or after November 26, 2016.

At trial, Plaintiff testified about communications she had with Defendant's human resources department in 2014 and the parties stipulated certain facts regarding written communications they exchanged between 2014 and 2017. The stipulation contained the only evidence introduced at trial about the parties' communications on or after November 26, 2016. (Trial Ex. JX-39.) In the first of eight numbered paragraphs, the stipulation described a letter Plaintiff's then-attorney sent to Defendant in December 2014, following up on Plaintiff's September 2014 request for transfer to a position in an elementary school. (*Id.* at 2.) The letter identified several open elementary positions to which Plaintiff could have been reassigned as a reasonable accommodation. (*Id.*) A list of open positions, dated December 16, 2014, accompanied the letter and was attached to the stipulation. (*Id.* at 2, 6-7.) Many of the listed open positions, including one identified in the stipulation, had been open since October and some of the positions had been open even longer. (*Id.* at 6-7.)

Paragraphs 2 through 7 of the stipulation described communications between the parties during 2015 and the final paragraph described a letter Plaintiff's then-attorney sent Defendant in February 2017. (*Id.* at 2-5.) In its entirety, that final paragraph read:

> On February 22, 2017, Ms. Blanks' attorney wrote to SPS's counsel and stated that Ms. Blanks had notified the district of her intention to return to work for the 2016-2017 school year, and that stated intention was to return, but only to a non-alternative school. [Plaintiff's attorney] set forth her belief that as of November 29, 2016, there were several positions listed on the District online job listing site that Ms. Blanks was willing to be reassigned to, including elementary classroom teacher positions at

8

>Dorman Elementary, Warner Elementary and Homer Elementary, and an Academic Intervention position at Homer Elementary. [Plaintiff's counsel] again stated that Ms. Blanks was willing to accept an assignment at an elementary position in a non-alternative school. [Plaintiff's counsel] wrote that Ms. Blanks would retire, effective the final day of the 2016-2017 school year, and that both Ms. Blanks and [the teacher's union] regarded Ms. Blanks' retirement as a constructive discharge by SPS. Ms. Blanks and [her union representative] were aware of and authorized this communication. [Defendant's employees,] Mr. O'Brien, Ms. Reardon and Ms. Shea received copies of this correspondence.

(*Id.* at 4-5.)

Had the February 22, 2017 letter been described in more detail or attached to the stipulation as an exhibit, the jury would also have learned that Plaintiff's then-attorney had first requested transfer to those open positions during a phone call on November 29, 2016.[4] Instead, the stipulation told the jury only that on November 29, 2016 there were some open positions and Plaintiff requested transfer to one of them in February 2017. Defendant has argued the nearly three-month gap required the jury to speculate about whether any of the positions open in November 2016 were still open in February 2017. Plaintiff initially countered by referencing the November 29, 2016 phone call. Observing that the stipulation did not mention the phone call, the court asked the parties to supplement their briefing on this issue with references to the trial record.

After obtaining the trial transcripts, the only additional evidence identified by the parties was the testimony offered by two trial witnesses regarding the open positions. Peter Reese, an employee of the Springfield Education Association, the union representing educators employed by Defendant, testified that he was the person who had identified the open positions listed in the stipulation. (Dkt.

---

[4] The February 2017 letter was not admitted at trial, but it was in the pretrial record. (Dkt. No. 54-9, 62-63.) Though absent from the stipulation, the letter referenced a phone call between counsel for Plaintiff and Defendant on November 29, 2016. As described in the letter, during the November 29, 2016 call, Plaintiff's attorney identified several open positions and renewed Plaintiff's request for transfer to an open position as a reasonable accommodation. However, the stipulation did not mention the phone call or otherwise explain that the February 2017 letter referenced an earlier oral communication between counsel.

9

No. 213, Trial Tr. Day 3, 48-49.) He described how he searched for open positions and confirmed the positions referenced in the stipulation were open in November 2016. (*Id.*) Thomas O'Brien, a human resources administrator employed by Defendant, testified that he had received the February 2017 letter. (Dkt. No. 215, Trial Tr. Day 5, 89-90.) When asked about the open positions, he testified that he did not recall whether he ever determined if any of them were still open in February 2017. (*Id.*) Neither Reese nor O'Brien mentioned the November 29, 2016 phone call and their testimony provided the jury with no information about whether any of the positions remained open in February 2017.

Taking this limited evidence into account, the court considers whether it required the jury to find Plaintiff had not proved by a preponderance of the evidence that she requested, and was denied, a reasonable accommodation after November 26, 2016. If so, Defendant is entitled, under Rule 50(b), to judgment as a matter of law; if not, the court must consider Defendant's alternate argument that, pursuant to Rule 59, the paucity of evidence of actionable conduct within the permitted time period warrants a new trial.

With the benefit of hindsight, it is clear that there were gaps in Plaintiff's trial evidence on this important issue. The only facts directly supported by the evidence were (1) there were positions open on November 29, 2016, and (2) Plaintiff's counsel requested transfer as a reasonable accommodation in February 2017. Plaintiff presented no evidence, at all, that her then-attorney had requested transfer as a reasonable accommodation during a phone call on November 29, 2016 or that her attorney had confirmed the positions were still open around the time she sent the February 2017 letter. Were this the only evidence, no reasonable jury could have concluded Plaintiff met her burden. However, the jury also had the 2014 list of open positions attached to the stipulation which showed that two years earlier there were vacancies that remained open for several months. When the complete stipulation is considered in the light most favorable to the verdict, the court cannot

10

conclude the evidence required the jury to find Plaintiff had failed to establish she made a timely request for a reasonable accommodation. *See Rodriguez-Valentin*, 27 F.4th at 20.

A court finding that the evidence was sufficient for the jury's verdict to survive a Rule 50 motion for judgment as a matter of law will often find the same evidence was sufficient for the verdict to survive a Rule 59 motion for new trial. *Id.* at 21. Nevertheless, as the First Circuit has explained, the standards for the two motions are different and,"[i]n some cases, the evidence might preclude judgment as a matter of law and yet lean so heavily in the other direction so as to justify a district judge in ordering a new trial." *Jennings*, 587 F.3d at 439 (quoting *Sailor Inc. F/V v. City of Rockland*, 428 F.3d 348, 353 (1st Cir. 2005)). The court concludes that is the situation here.

Plaintiff failed to provide the jury with evidence that she had requested a reasonable accommodation on November 29, 2016 and a finding that one or more of the November 2016 openings remained open in February 2017 went against the weight of the evidence. Reese testified that he searched for open positions in November 2016, but he did not testify to any follow-up searches or even whether, in his experience, positions open in November 2016 were likely to have still been open in February 2017. O'Brien testified that he had no recollection of ever checking whether any of the positions were open when he received the February 2017 letter and he also was not asked about the likelihood that one or more of the positions stayed open. Without the additional context that Reese and O'Brien or other witnesses or evidence could have provided (but did not), the court finds the 2014 vacancy list insufficiently probative as to what positions were open two years later. In the end, Plaintiff bore the burden of proof on this issue and, in independently weighing the evidence, the court finds it would be unjust to permit the verdict to stand under Rule 59 on this record. *See Jennings*, 587 F.3d at 436. For this reason, the court will grant Defendant's alternative request for a new trial, absent a finding that Defendant is entitled to judgment as a matter of law on the basis of one of its other arguments.

B.  Qualified Individual Disabled Under the ADA

Defendant has also argued that it is entitled to judgment as a matter of law because Plaintiff failed to present sufficient evidence to establish that she was disabled under the ADA. At trial, Plaintiff testified that in 2011, SPS transferred her from a teaching position at a neighborhood school to one at Balliet Middle School, one of several alternative schools operated by SPS. Although Balliet was designated as an alternative school, she said she did not initially understand what that meant with respect to student behavior. (Dkt. No. 210, Trial Tr. Day 1, 46.) She told the jury that before the transfer, she had been a teacher with SPS for twenty-five years, her teaching had always been rated as meeting or exceeding expectations, and she had never had to put a student in time-out, been threatened by a student, or been assaulted by a student. (*Id.* at 36-40, 46-47.) In contrast, she described becoming overwhelmed by aggressive student behavior at Balliet to such an extent that she sought medical treatment to address situational stress, anxiety, and fear related to her job. She also described unsuccessful attempts to seek support from administrators at Balliet and acknowledged that her classroom performance suffered as her stress increased.

She testified that her first year at Balliet "went well," and her job performance was rated as "[m]et expectations." (*Id.* at 47, 54-55.) That year, she taught English Language Arts to different groups of seventh grade students. On a few occasions, she had students who acted out in the classroom in ways she had not experienced before. (*Id.* at 60-61.) When that happened, she called an "interventionist" for assistance. (*Id.* at 60.) The interventionist would remove the student from the classroom and work with the student until the student was ready to return to the classroom. (*Id.*) Plaintiff had not previously worked at a school with interventionists. (*Id.* at 60-61.)

The next year, Plaintiff was assigned to teach all four academic subjects to one group of sixth graders. (*Id.* at 57.) She testified that the new assignment was challenging because it increased her workload significantly. (*Id.* at 56-57.) Despite the increased workload, Plaintiff described the first

12

part of the year as "pretty good," but stated she began having trouble with student behavior during the spring of 2013. (*Id.* at 58.) Plaintiff testified that "[t]he students, they would start threatening [her], throwing things off [her] desk, knocking down the bookshelves" and trying to block doors. (*Id.*) She described experiencing anxiety, stress, and depression because of the way her students were behaving towards her. She acknowledged that during this time, administrators documented performance problems in her classroom, but she attributed those difficulties to her students' behavior. (*See id.* at 65-73.) Despite the difficulties, Plaintiff testified that at the end of her second year she still hoped the situation would improve the following year. (*Id.* at 74.)

Instead, her third-year teaching at Balliet got off to a rough start. She testified that the students called her names, threatened her, swore at her, and threw things at her, including books, milk cartons, trash cans, and thick erasers. (*Id.* at 75.) Plaintiff testified that the number of students in her class varied, but that she had about six students who threw things at her, slapped her hands, and slapped or snatched paper out of her hand. (*Id.* at 76.) She described students calling her "bitch" and "pussy" and making threats like "I'll kill you," "I'll smack your hands," and "I'll fight you." (*Id.* at 77.) Plaintiff also explained that at times her students had worked together to block her from the door or classroom telephone, behaviors that made it difficult for her to call interventionists for help. (*Id.* at 79.)

Plaintiff's medical records documented a visit she had with her primary care doctor on October 3, 2013, during which she reported experiencing anxiety and stress related to her work. She testified about telling her doctor that she felt depressed, sad, and afraid about her job and was having difficulty sleeping. (Dkt. No. 211, Trial Tr. Day 2, 88, 93.) Plaintiff also recalled telling her doctor that she lacked the training needed to be successful at an alternative school like Balliet. (*Id.* at 88.) She testified about visits to her doctor in November 2013, December 2013, January 2014, and February 2014, explaining that it was atypical for her to see her doctor so frequently, but that her

13

work-related stress and depression had been increasing during that time. (*Id.* at 90.) In early 2014, Plaintiff got a medical note from her doctor. (*Id.* at 92.) The note stated that Plaintiff had "situational anxiety regarding her fear of threats and failure to discipline students in her work as a teacher and she feels hopeless and fearful about a lack of support in obtaining a controlled environment." (Trial Ex. JX 5.) Plaintiff provided the note to SPS human resources and went on leave for the remainder of the 2013-2014 school year. (Dkt. No. 211, Trial Tr. Day 2, 94-95.)

During the spring of 2014, she notified SPS human resources that she wished to return to teaching in the fall of 2014, provided she could work somewhere other than Balliet Middle School. (*Id.* at 95-97.) When Plaintiff was not able to obtain a position at a different school, her doctor wrote a second letter, in August 2014, stating Plaintiff could return to teaching, but not at an alternative school. (Trial Ex. JX 6.) Plaintiff provided the second letter to SPS human resources. She testified that she was never asked to provide any additional medical documentation regarding her disability. (Dkt. No. 211, Trial Tr. Day 2, 95-100.) Plaintiff's medical records from her primary care doctor were admitted as evidence at trial and records of Plaintiff's later visits with her doctor documented improvements in her mental health. Notes from a September 2016 visit, for example, described Plaintiff's mental health as "much improved" and no later notes described Plaintiff experiencing symptoms of anxiety or depression. (*Id.* at 213-17; Trial Ex. JX 2.)

i.   Disability

The jury's first finding on the Special Verdict form was that Plaintiff "was disabled within the meaning of the [ADA] on or after November 26, 2016." (Dkt No. 175, Jury Verdict.) To establish her disability, Plaintiff had to prove that, during the applicable period, she (1) suffered from a mental impairment,[5] (2) the mental impairment affected her in a major life activity, and (3) her

---

[5] Plaintiff had not alleged that she suffered from a physical impairment.

14

impairment substantially limited her in that major life activity. 42 U.S.C. § 12102(1); *see also Ramos-Echevarria v. Pichis, Inc.*, 659 F.3d 182, 187 (1st Cir. 2011). When assessing the sufficiency of Plaintiff's evidence for purposes of determining whether to enter judgment as a matter of law, the court credits all testimony and draws all inferences that support the jury's finding that Plaintiff was disabled. *See Rodriguez-Valentin*, 27 F.4th at 20.

Plaintiff's trial evidence regarding her mental impairment included her testimony and two letters signed by her treating physician, Dr. Alphonse Calvanese. In the first, from February 2014, Dr. Calvanese opined that Plaintiff suffered from "situational anxiety" related to student behavior so extreme she was disabled from her teaching position. (Trial Ex. JX 5.) Dr. Calvanese wrote in the second letter, dated August, 21 2014, that Plaintiff was "able to return to work for the 2014/2015 school year, but not in an Alternative School." (Trial Ex. JX 6.) Defendant did not call Dr. Calvanese as a witness or challenge his basis for opining about the cause of Plaintiff's impairment or her inability to work in any alternative schools. As with witness testimony, the jury was free to decide what, if any, weight to give to the letters.

Taken together, Plaintiff's testimony and the letters from Dr. Calvanese paint a straightforward picture of an experienced teacher whose ability to function in and out of work became impaired after she was assigned to teach multiple students who engaged in persistently aggressive behaviors, beyond any student behavior she had previously encountered during a lengthy teaching career in the same school district. A lay jury crediting this evidence could reasonably conclude that Plaintiff was suffering from a mental impairment when she took leave from her job at Balliet. Such a jury could also conclude that because Plaintiff's mental impairment was situational, evidence that her mental health symptoms were resolved in September 2016 did not require the jury to find she ceased to suffer from a mental impairment after she stopped teaching at Balliet.

The court next considers the evidence that Plaintiff's mental impairment affected her in a

15

major life activity. Plaintiff has identified "working" as the only major life activity affected by her mental impairment. In order to establish a substantial impairment in the major life activity of working, a person must show they are unable to perform a "class of jobs" or a "broad range of jobs in various classes." 29 C.F.R. pt. 1630, App. The standard is not met if a person shows only that they are unable to perform "the unique aspects of a single specific job." *Id.* Expert vocational testimony or labor statistics may help a plaintiff to establish that there is a "class of jobs" they cannot work due to their impairment, but "[t]here is no per se rule about either the type or quantum of evidence that a plaintiff seeking to establish a disability must supply." *Mancini v. City of Providence*, 909 F.3d 32, 39 (1st Cir. 2018).

To meet her burden, Plaintiff testified that Balliet Middle School was one of several alternative schools operated by SPS. She described encountering multiple students during her three years at Balliet who behaved in an aggressive manner well beyond anything she experienced while teaching in different SPS neighborhood schools over many years. She also explained that, unlike the schools where she had previously taught, Balliet had staff employed as interventionists, specifically to help manage difficult student behavior. Although witnesses called by Defendant offered very different descriptions of student behavior at Balliet, the jury was free to assign greater weight to Plaintiff's testimony. Through her testimony, Plaintiff starkly distinguished the types of aggressive student behavior she repeatedly encountered at Balliet from the student behavior she saw at the non-alternative schools where she previously taught. A reasonable jury crediting her testimony could conclude that all teaching positions at Balliet required contact with aggressive student behaviors, while teaching positions in SPS neighborhood schools did not. Although Plaintiff's own testimony was limited to her experiences at Balliet, a reasonable jury could conclude that there are other "alternative schools" serving similar student populations both within SPS and operated by other large school districts. The court, therefore, finds the evidence was sufficient to support the jury's

16

determination that Plaintiff was precluded from a class of jobs, not simply one specific job.

The evidence that sufficed for the first two elements required to establish disability also suffices for the third requirement, demonstrating that Plaintiff's mental impairment substantially limited her ability to work a class of jobs. Defendant's decision to transfer Plaintiff to Balliet indicates an expectation that most teachers with similar training and experience would be able to work at Balliet. Yet, in Plaintiff's case, experiencing aggressive student behavior at Balliet caused her so much anxiety, stress, and fear, that she retired early rather than return to a teaching position working with the same student population.

      ii.      Qualified Individual

After finding that Plaintiff was disabled, the jury next found "she was qualified to perform the essential functions of the job of a teacher with or without a reasonable accommodation on or after November 26, 2016." (Dkt. No. 175, Jury Verdict Form.) Plaintiff testified that she had been a teacher for many years and, prior to her transfer to Balliet, had planned to teach until she could retire with an 80% pension. The jury heard evidence that Plaintiff had not received a negative evaluation or been disciplined until after she was transferred to Balliet. The jury also heard evidence that Plaintiff was struggling at Balliet to such an extent that she was disciplined and was in danger of being placed on a performance improvement program. Defendant argued that evidence, which was not disputed by Plaintiff, conclusively established that she was not a qualified individual. The court disagrees. Certainly, a different jury could have accepted Defendant's explanation, but the jury in this case clearly credited Plaintiff's version of events since it found she remained qualified to perform the essential functions of a teacher, even though she was not able to continue teaching at Balliet. That finding was consistent with Plaintiff's testimony that her performance struggles were a result of the stress, anxiety, and fear she experienced after the transfer to Balliet.

For the reasons discussed above, the court concludes that Defendant is not entitled to entry

17

of judgment as a matter of law pursuant to Rule 50(b) with respect to the portion of the jury's finding that Plaintiff was disabled with the meaning of the ADA and was a qualified individual on or after November 26, 2016. The court need not consider Defendant's alternative argument that it is entitled to a new trial under Rule 59 because a new trial has already been granted on other grounds.

    C. Failure to Provide Reasonable Accommodation

After finding Plaintiff was disabled and a qualified individual, as those terms are defined in the ADA, the jury found Defendant failed to provide her with a reasonable accommodation.[6] *See Audette v. Town of Plymouth, MA*, 858 F.3d 13, 20 (1st Cir. 2017) (listing the elements of a failure to accommodate claim under the ADA). The jury separately found that Plaintiff requested a reasonable accommodation, Defendant failed to provide her with a reasonable accommodation, and Defendant could have done so without incurring an undue hardship. Defendant has argued that it is entitled to entry of judgment as a matter of law because none of those findings were supported by the evidence at trial.

The only reasonable accommodation sought by Plaintiff was reassignment to a teaching position at a non-alternative school. Although the ADA explicitly provides that reassignment to a vacant position can be a reasonable accommodation, Defendant has consistently taken the position that a teacher's request to transfer to another school conflicts with its obligations under MERA and, therefore, is not a reasonable accommodation. This court rejected that interpretation of MERA and the ADA at summary judgment and has reiterated that position each time Defendant has raised the issue since. However, resolution of that legal question did not decide whether, in this specific case,

---

[6] A plaintiff must also establish that the employer knew of their disability. *Audette*, 858 F.3d at 20. Although Defendant has disputed the existence of Plaintiff's disability, it has not disputed that it knew of her disability claim in early 2017.

18

transfer to an open position was a reasonable accommodation for Plaintiff.

At trial, Plaintiff had the burden of proving that when she requested transfer to a non-alternative school, there was an actual vacant position for which she was qualified. As discussed above, a reasonable jury crediting Plaintiff's testimony could conclude that although she had become unable to work at Balliet, she remained qualified for teaching positions at non-alternative schools. Additionally, both Plaintiff and Peter Reese testified about several positions at neighborhood schools that were open at various points in time. Putting aside the issue of exactly when the positions were open, which the court addressed separately above, a reasonable jury crediting Plaintiff's evidence had a sufficient basis to conclude that transfer to a position at a non-alternative school would have been a reasonable accommodation for her disability.

Defendant then had the opportunity to convince the jury that reassignment was not a reasonable accommodation for Plaintiff, it had offered her a reasonable accommodation, or reassignment would have imposed an undue hardship. To this end, Defendant presented evidence that it had offered to transfer Plaintiff to an alternative elementary school and argued that would have provided Plaintiff with a reasonable accommodation. Defendant also presented evidence, testimony, and exhibits demonstrating Plaintiff was not an effective educator when she requested transfer to a non-alternative school and identified operational needs and educational goals that would be undermined by transferring an underperforming teacher to another school. Some of Defendant's evidence was compelling, but the court is persuaded that a jury making its own credibility determinations and weighing the evidence could reasonably conclude that Plaintiff requested, and Defendant failed to provide, a reasonable accommodation to address Plaintiff's disability. Having already determined that a new trial is warranted, the court need not address whether Defendant's arguments about reasonable accommodation provide a separate basis for a new trial.

V. CONCLUSION

For the reasons set forth above, Defendant's Motion for Judgment as a Matter of Law After Trial and/or, in the Alternative, Motion for New Trial and/or Remittitur (Dkt. No. 187) is DENIED as to its request for entry of judgment as a matter of law, GRANTED as to its request for a new trial, and DENIED AS MOOT as to the request for remittitur.

It is So Ordered.

    /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge